UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SYRIS T. BIRKLEY,

                Plaintiff,

v.                                 Case No. 22-cv-1313-pp

KEVIN EADE, *et al.*,

                Defendants.

**ORDER GRANTING IN PART DEFENDANT'S MOTIONS TO DISMISS (DKT. NOS. 29, 33), RELINQUISHING JURISDICTION OVER STATE LAW CLAIMS, DENYING PLAINTIFF'S REQUEST FOR ENTRY OF DEFAULT (DKT. NO. 44) AND DISMISSING CASE**

      Syris T. Birkley, who was incarcerated at the Milwaukee County Jail when he filed this case and is representing himself, filed a complaint alleging that the defendants violated his constitutional rights. The court screened the amended complaint (Dkt. No. 15) and allowed the plaintiff to proceed on (1) a Fourth Amendment false arrest claim against John Schaefer, (2) a Fourteenth Amendment due process fabrication-of-evidence claim against defendant Kevin Eade and (3) Wisconsin state law defamation of character claims against Schaefer and Eade. Dkt. No. 16 at 11. The defendants, who are represented by separate counsel, each have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), dkt. nos. 29, 33, and the plaintiff has filed an "Affidavit of the truth for Default Judgment," in which he asks the Clerk of Court to enter default against the defendants, dkt. no. 44. This order grants

1

the defendants' motions to dismiss, denies the plaintiff's request for entry of default and dismisses this case.

I. **Amended Complaint's Allegations**

The plaintiff alleges that on November 22, 2018, an armed robbery occurred at a Target store after which the defendants "participated in a 'conspiracy to violate' the constitution, codes, polic[ies], and statutory law [] by defiling their oath to uphold [and] enforce the Constitution." Dkt. No. 15 at 2. The plaintiff asserts that he was unlawfully detained for the alleged armed robbery in Milwaukee County Case Number 2018CF005627, and that on December 18, 2018, Officer Schaefer arrested him. Id. at 6. The alleged unlawful arrest and false imprisonment were allegedly caused by falsified documents and perjury of the West Milwaukee Police Department and Detective Eade's reports. Id.

The plaintiff alleges that on November 23, 2018, Eade stated that he had reviewed the "Target footage" before writing the police report. Id. Eade allegedly falsified a legal document "on pg. 11 of 23 of the West Milwaukee Police Department report(s) Incident Report #18-008711, when they stated '[The plaintiff] re-enter[ed] the Target and concealing liquor in [his] pants and didn't render payment." Id. at 6-7. Eade also allegedly falsely stated that the plaintiff "walked toward the allege[d] victim's car and robbed her and or aid[]ed in said robbery." Id. at 7. The plaintiff states that the "footage from Target contradict[ts] what's in Eade's report that he reviewed before writ[ing] his report." Id. The police report also allegedly falsely stated that a "temporary

2

felony warrant" was entered in the NCIC on November 23 and that it had expired by the time the plaintiff was arrested on December 18, 2018. Id. However, the plaintiff states that another warrant was entered on November 26. Id.

The plaintiff alleges, "On review of the Target footage from the allege[d] robbery, it shows no robbery and or me aiding in one [] it shows nothing at all, I never stole out the store either." Id. at 9. He states that the temporary felony warrant is not a warrant and that the judge reviewed something and refused to authorize the warrant/"the CR-215 form." Id.

The plaintiff states that each officer knowingly conspired to "deprive/frame" him by violating "Penal Code 118.1." Id. Eade allegedly "falsified information/evidence on Material Matter with full intent to injure, when Eade review[ed] the footage before writ[]ing his report." Id. The plaintiff states, "Due to said 'defamation' I was unlawfully detained, kid[]nap[p]ed, held for ransom in the Milwaukee County Sheriff Office (Jail) w[h]ere I was 'Falsely Imprisoned.'" Id. He also states that he was "unlawfully searched, property seized without my permission or valid warrant(s) by (Milwaukee Police Officer; John Schaefer . . . who [forced] me into slavery." Id. The plaintiff alleges that he was placed in "slavery" at the jail and that Earnell Lucas was the sheriff at the time of the defendants' unlawful acts. Id. at 11. The plaintiff was confined at the jail from December 18, 2018 to April 6, 2021, when he was released on bond. Id.

The plaintiff states that on February 17, 2022, "the unlawfull [sic] case was dismissed due to the 'Footage,' falsified documents/statement." Id. He alleges, "The evidence produce[d] mention[ed] in said complaint, information Form, and the (Affidavit) CR-215 'probable Judicial determination Form' lacks probable cause, and show[s] no constitutionally and contain[s] no essential fact constitu[t]ing the offen[s]e charged;" the plaintiff says that this is "[d]ue to the 'T[ar]get Footage' which the whole case is 'relied on [sic]." Id.

At screening, the court allowed the plaintiff to proceed against Officer Schaefer based on allegations that he arrested the plaintiff without probable cause in violation of the Fourth Amendment. Dkt. No. 16 at 9. The court also allowed the plaintiff to proceed on a due process fabrication-of-evidence claim against Detective Eade based on allegations that Eade had falsified the police report about the robbery. Id. The court exercised supplemental jurisdiction over a state law defamation of character claim against the defendants. Id. at 10-11.

## II. Standard for Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." Alarm Detection Sys., Inc. v. Village of Schaumburg, 930 F.3d 812, 821 (7th Cir. 2019) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662,

4

678 (2009). When evaluating a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true and draws reasonable inferences in the plaintiff's favor. Taha v. Int'l Bhd. of Teamsters, Local 781, 947 F.3d 464, 469 (7th Cir. 2020) (citing Yeftich v. Navistar, Inc., 722 F.3d 911, 915 (7th Cir. 2013)). A plaintiff's failure to respond to an argument raised in a motion to dismiss forfeits an argument on that issue. See Alioto v. Town of Lisbon, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."); Lekas v. Briley, 405 F.3d 602, 614 (7th Cir. 2005).

In considering a motion to dismiss, the court may consider materials central to and referred to in the complaint, and information subject to judicial notice. See Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012); Adams v. City of Indianapolis, 742 F.3d 720, 729 (7th Cir. 2014); see also Menomonee Tribe of Wis. v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998) (holding it is proper to consider matters not in the plaintiff's complaint but that are subject to judicial notice; that is, historical documents, documents contained in the public record, and reports of administrative bodies.). The court may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6). See, e.g., White v. Keely, 814 F.3d 883, 885 n.2 (7th Cir. 2016).

**III. Defendants' Motions to Dismiss (Dkt. Nos. 30, 33)**

Defendant Eade contends that the alleged fabrications do not rise to the level of a constitutional violation because they were not material to the probable cause finding and the existence of probable cause defeats the fabrication-of-evidence claim. Dkt. No. 30 at 9-16. He also contends that the plaintiff's state-law defamation claim should be dismissed. Id. at 24-29. In his separate motion to dismiss, defendant Schaefer contends that the plaintiff fails to state a claim because (1) an arrest warrant existed for the plaintiff, which resulted in a lawful arrest and (2) the plaintiff conceded probable cause for the entire proceeding—arrest, complaint and prosecution—at the preliminary hearing. Dkt. No. 34 at 5. Schaefer also contends that the court should dismiss the plaintiff's defamation claim. Id.

Along with his motion to dismiss, Eade filed a copy of the complaint from the plaintiff's criminal case, Milwaukee County Case No. 2018CF5627. Dkt. No. 31-1 at 1-3. The criminal complaint is captioned State of Wisconsin v. Syris Thomas Birkley, Israel Milton and Johnekia Morgan, DA Case No. 2018ML29931, and it charges the three individuals with Robbery, Armed (Use of Force)—PTAC, as a party to a crime. Id. at 1. It states that on November 22, 2018, the plaintiff, Milton and Morgan "as a party to a crime, with intent to steal, by the use or threat of use of a dangerous weapon, did take property from the person of AMR, the owner, by use of force against the person," in violation of Wis. Stat. §§943.32(1)(a) and (2), 939.50(3)(c), 939.05. Id. at 1. The

6

criminal complaint contains a statement of probable cause that recounts in part:

> Complaint states that on November 22, 2018, at approximately 9:49 PM, West Milwaukee police were dispatched to the Target store at 1501 Miller Parkway, Village of West Milwaukee, County of Milwaukee, State of Wisconsin, in response to a report of an armed robbery. Upon arriving, police spoke with AMR who stated that on the above date at the above location she was approached by two men who threw her to the ground and took her purse. She stated that one of the men had a gun during this incident. She explained that she and her seven year old son had arrived at Target at approximately 9:45 PM and she parked her car in the parking lot. She stated she got out of the driver's door and was about to get her son out of the back driver's side door when she was confronted by two men wearing hoodies. She described the men as being African American men approximately 20-25 years old with the hoods pulled forward. She stated that she faced them and she saw that one of the men was holding a small, black handgun in his left hand. She stated that the other individual, the one without a gun, grabbed her purse that she was wearing on her left shoulder and yanked it away from her and threw her to the ground. She stated that both men then went to a car that was waiting for them and fled the area. She stated that her purse contained her debit cards, consul ID, and other property.
>
> Police reviewed video of this incident and were able to determine the license plate of the car into which the gunman and his co-actor entered after the armed robbery. Police went to the address of 4325 West Garfield Avenue in Milwaukee because records showed that MPD had stopped defendant Johneika Morgan in that car in July of 2018. Police subsequently searched the residence at 4325 West Garfield and located some of AMR's property in the bedroom closet of the bedroom being used by defendant Johneika Morgan. Police also located the black Nissan Altima with the license plate matching the one from Target in the driveway at that location.
>
> Police located defendant Johneika Morgan at the residence along with defendant Israel Milton and both were arrested at that scene. Defendant Milton had on the same clothing that one of the actors is seen wearing in this incident. Police interviewed defendant Morgan after advising her of her Miranda rights which she stated she understood and agreed to waive. Defendant Morgan admitted to being the driver of the Nissan in this incident and identified defendant Israel Milton and defendant Syris Birkley as the

individuals who committed this robbery. She stated that she did not know that they were going to rob anyone and she did not know that defendant Birkley had a gun until after the incident occurred. She stated that at one point her cousin, referring to defendant Birkley, got out of the car and she initially stated that she and defendant Milton stayed in the car. However, she later told police that defendant Milton also got out of the car with defendant Birkley. She stated that, "I never stole anything or any guns in my life. I never robbed anybody." She stated that defendant Birkley had the gun and when police asked her what defendant Birkley did with the gun she said that he robbed a lady or something like that. She stated that defendant Birkley scared her. She stated that she did no[t] know that he had a gun until the point of the robbery. She stated that defendant Birkley ran up to a lady and came back with a purse. She stated that when he got back in the car he told her to drive and later handed her some cards, referring to the ID cards from the victim that were located in her bedroom.

Police interviewed defendant Milton after advising him of his Miranda rights which defendant Milton stated he understood and agreed to waive. When asked about the incident in the parking lot defendant Milton stated, "I wasn't involved in anything. I can't speak for nobody else." Defendant Milton stated that he was at Target with defendant Morgan, Birkley and another female and that they were there to shop. He stated that all four of them went inside the Target and he bought some snacks at Target and then all four walked together to the parking lot and got back into the car.

Complainant states that police reviewed video from Target which shows defendant Milton involved in a shop lifting incident of alcohol from the store prior to the above-described armed robbery. Police watched video from the Target parking lot which shows two individuals approach the victim in this case and the video shows the victim going to the ground and the two men then returning to the black Nissan. Target security personnel had filmed the defendants and a fourth individual, a heavyset African American woman, inside the Target prior to and during the shoplifting. The group of four had entered the store together and then left and the two men, defendants Milton and Birkley, returned to the store to steal alcohol and underwear. Target security personnel filmed the car, which was a black Nissan Altima and filmed the license plate of the car which led the police to the West Garfield address and locating defendants' Morgan and Milton and recovering some of the victim's property from this incident. Prior to the robbery the Nissan is seen driving slowly in the parking lot with its lights off and then stopping and waiting for the robbers while they rob AMR.

Dkt. No. 31-1 at 1-3.

Defendant Eade also filed a felony warrant issued for the plaintiff's criminal case (Milwaukee County Case No. 2018CF5627), which was signed by Commissioner Cedric Cornwall on November 29, 2018. Dkt. No. 31-2. Eade filed the transcript of the preliminary hearing held on December 27, 2018, in Milwaukee County Case No. 2018CF5627. Dkt. No. 31-3. The transcript shows that at that hearing, the plaintiff waived a preliminary hearing and acknowledged that the State could show probable cause for the charge of robbery with use of force as a party to a crime. Id. at 3-6. The court takes judicial notice of the documents Eade filed in support of his motion to dismiss because they are public records and public court documents. See, *e.g.*, White v. Keely, 814 F.3d 883, 885 n.2 (7th Cir. 2016).

The plaintiff filed a single response to both defendants' motions to dismiss, which contains a title and heading that states, "ABOUT DEFECTIVE WRITS AND VOIDS. IMPERIAL MU'UR LAW OFFICE 'W[h]ere we Don't practice law, We DEMONSTRATE.'" Dkt. No. 38 at 1. The filing is eighty-three pages long, rambling, and in many places, impossible to understand. It appears, however, that the plaintiff maintains that there was not a valid warrant to arrest him, that the criminal complaint relies on fraudulent statements and that the police report showed no probable cause. Id. at 9-10. The plaintiff attached to his response police reports from the West Milwaukee Police Department that appear to relate to this case. Id. at 24-32. He also attached the transcript of testimony from the jury trial of Israel Milton that relates to the

9

incident described in the plaintiff's amended complaint. Id. at 33-83. The plaintiff's response does not address the arguments in the defendants' motions to dismiss.[1]

Defendant Eade contends that the amended complaint fails to state a Fourteenth Amendment due process claim for fabrication of evidence because the plaintiff's criminal charge did not result in a conviction. Dkt. No. 30 at 10-11. Eade contends that the plaintiff's claim would arise under the Fourth Amendment but that the plaintiff fails to state a Fourth Amendment claim. Eade argues that even assuming he made false statements in the police report about video evidence, the statements are not material because the criminal complaint states probable cause notwithstanding the plaintiff's contentions about the Target video surveillance. Id. at 13.

The criminal charges against the plaintiff in Milwaukee County Case No. 2018CF5627 were dismissed and he never went to trial. Dkt. No. 15 at 9. (Eade states that this is because the co-actor/defendant/key witness Johneika Morgan passed away right before trial, but the court cannot locate authority supporting this assertion, perhaps because the relevant criminal records are no longer available on Wisconsin's public online court record system.) Because the plaintiff has not been convicted, the Fourth Amendment applies to his

---

[1] The defendants filed separate replies in support of their motions to dismiss. Dkt. Nos. 40, 41. On February 28, 2024, and March 1, 2024 the plaintiff filed unauthorized sur-replies. Dkt. Nos. 42, 43. This district's rules do not provide for a sur-reply and the plaintiff did not ask the court's permission to file his sur-replies. See Civil Local Rule 7 (E.D. Wis.). The court did not consider the sur-replies when resolving the defendants' motions to dismiss.

10

fabrication-of-evidence claim against Eade—not the Fourteenth Amendment as the court mistakenly stated in the screening order. See Patrick v. City of Chicago, 974 F.3d 824, 834-35 (7th Cir. 2020) (citing Lewis v. City of Chicago, 914F.3d 472, 476-78 (7th Cir. 2019)). The plaintiff does not state a claim under the Fourteenth Amendment.

An officer violates the Fourth Amendment if he "knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting [a] warrant and the false statements were necessary to the determination that a warrant should issue." Lawson v. Veruchi, 637 F.3d 699, 705 (7th Cir. 2011) (quoting Knox v. Smith, 342 F.3d 651, 658 (7th Cir. 2003)). "Immaterial misstatements will not invalidate an otherwise legitimate warrant." Molina v. Cooper, 325 F.3d 963, 968 (7th Cir. 2003) (quoting Forman v. Richmond Police Dep't, 104 F.3d 950, 964 (7th Cir. 1997)). "[I]f an officer knowingly or recklessly includes false information in an affidavit and that information is not material, he will not be liable in a § 1983 action because the plaintiff will not be able to prove a constitutional violation." Rainsberger v. Benner, 913 F.3d 640, 653 (7th Cir. 2019); see also Lewis, 914 F.3d at 476-78 (fabrication of evidence claim under Fourth Amendment must allege that the defendant knowingly, intentionally or with reckless disregard for the truth made false statements that were necessary to the probable cause determination).

The plaintiff alleges that Eade fabricated statements in his police report, stating that the plaintiff "walked toward the allege[d] victim's car and robbed her and or aided in the said robbery." Dkt. No. 15 at 7. The plaintiff argues that

the "footage from Target contradict[ts] what's in Eade's report that he reviewed before writ[ing] his report." Id. As Eade argues in his brief in support of his motion to dismiss, the criminal complaint does not rely on these alleged fabricated statements to support the plaintiff's criminal charge; the criminal complaint alleges that a robbery occurred and that police were able to track a license plate associated with the robbery to a home where the victim's items were found and where witnesses identified the plaintiff as committing the robbery. Dkt. No. 30 at 13. As summarized by Eade in his brief:

> Specifically, after tracking the license plate of the vehicle to the home of the co-defendants, one of the co-defendants, Johneika Morgan, admitted to being the driver of the getaway vehicle and specifically <u>identified [the plaintiff] as participating in the robbery</u>. Johneika also stated that <u>[the plaintiff] was carrying a gun during the robbery</u>. She indicated <u>[the plaintiff] stole the purse from AMR</u>. After he stole the purse, <u>Johneika told police that [the plaintiff] got back in her vehicle, told her to drive, and later gave her the victim's ID cards</u>. Those ID cards and other materials were also found in Johneika's home. Another co-defendant, Israel Milton, also admitted to being at Target that night and stated that [the plaintiff] was there as well. Thus, notwithstanding the discussion in the police report regarding surveillance footage, the criminal complaint established that (1) [the plaintiff] was identified as being at the Target that night by two co-defendants; (2) [the plaintiff] was identified as being in the vehicle that police believed was associated with the robbery; (3) [the plaintiff] was identified as committing the robbery by a witness/co-defendant; (4) [the plaintiff] was identified as having been carrying a gun during the commission of the robbery by witness/co-defendants; and (5) [the plaintiff[ was identified as later giving the victim's ID cards to a co-defendants and police later found those ID cards at the co-defendant's home.

Id. at 14 (emphasis in original).

The facts alleged in the criminal complaint established probable cause for the plaintiff's arrest. See Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003); Mustafa v. City of Chicago, 442 F.3d 544, 547-48 (7th Cir.

12

2006). And because the allegedly fabricated statements regarding the Target video surveillance were not necessary to establish probable cause that the plaintiff participated in the robbery, he has not stated a Fourth Amendment claim against Eade. See Fleming v. Livingston County, Ill., 674 F.3d 874, 881 (7th Cir. 2021) ("[E]ven if Turner had fabricated evidence, that is not enough; rather the falsifications must be material to the finding of probable cause."); Barnett v. City of Chicago, Case No. 18-c-7946, 2023 WL 4549507, at *5 (N.D. Ill. July 14, 2023) ("Even assuming Kulisek knew of or participated in the fabrication of statements in Barnett's arrest report, Barnett cannot prevail because the statements are not necessary for a finding of probable cause."). The court will grant Eade's motion to dismiss the plaintiff's constitutional claim.[2]

The plaintiff alleges that defendant Schaefer unlawfully arrested him on December 18, 2018. But that arrest did not violate the plaintiff's constitutional rights because the criminal complaint established probable cause for the arrest and a valid felony warrant existed. See Baker v. McCollan, 443 U.S. 137, 143 (1979); Franks v. Delaware, 438 U.S. 154, 171-72 (1978); see also Sow v. Fortville Police Dep't, 636 F.3d 293, 301-02 (7th Cir. 2011). As the court has explained, the plaintiff conceded at his preliminary hearing that probable cause existed for his arrest. Under these circumstances, the plaintiff fails to state a Fourth Amendment false arrest claim against Schaefer.

---

[2] Because the allegations in the amended complaint do not state a constitutional violation against Eade, the court need not consider Eade's other arguments in support of his motion to dismiss his federal claim.

13

The defendants contend that the court should dismiss the plaintiff's state law defamation of character claims against them on the merits. Because the court has concluded that the plaintiff has no federal claims against the defendants, the court instead will relinquish supplemental jurisdiction over the state law claims. See 28 U.S.C. §1367(c)(3); Lavite v. Dunstan, 932 F.3d 1020, 1034-35 (7th Cir. 2019).

**IV.    Plaintiff's Request for Entry of Default (Dkt. No. 44)**

The plaintiff has filed a document titled Affidavit of the truth for Default Judgment, in which he asks the court to enter default judgment against the defendants because they did not answer the amended complaint. Dkt. No. 44 at 1-2. On October 30, 2023, the court screened the amended complaint, ordered the United States Marshals Service to serve the defendants and ordered the defendants to file a responsive pleading to amended complaint. Dkt. No. 16 at 11-12. The court's docket shows that a waiver of service form was sent to defendant Schaefer on November 8, 2023; his answer or motion under Rule 12(b) was due within sixty days. Dkt. No. 19; Fed. R. Civ. P. 12(a), (b). Defendant Eade's waiver of service form was sent to him on November 1, 2023 and his answer or Rule 12(b) motion was due within sixty days. Dkt. No. 24; Fed. R. Civ. P. 12(a), (b). Both defendants timely filed their responsive pleadings (motions to dismiss): Eade on December 29, 2023 (Dkt. No. 29) and Schaefer on January 8, 2024 (Dkt. No. 33). The defendants are not in default and the court will deny the plaintiff's request.

14

### V. Conclusion

The court **GRANTS IN PART** defendant Eade's motion to dismiss as it relates to the plaintiff's constitutional claim and **ORDERS** that the claim is **DISMISSED WITH PREJUDICE**. Dkt. No. 29.

The court **GRANTS IN PART** defendant Schaefer's motion to dismiss as it relates to the plaintiff's constitutional claim and **ORDERS** that the claim is **DISMISSED WITH PREJUDICE**. Dkt. No. 33.

The court **RELINQUISHES JURISDICTION** over the plaintiff's state law claims and **ORDERS** that the claims are **DISMISSED WITHOUT PREJUDICE**.

The court **DENIES** the plaintiff's request for entry of default. Dkt. No. 44.

The court **ORDERS** that this case is **DISMISSED**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If

15

the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 9th day of July, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

16

Case 2:22-cv-01313-PP   Filed 07/09/24   Page 16 of 16   Document 49